MUTUAL CHEMICAL COMPANY OF AMERICA, Appellant, *v.* MARDEN, ORTH & HASTINGS CO., INC., Respondent.

**Contract — sale of merchandise — waiver of strict performance as to time of delivery — when tender within reasonable time — evidence of custom or trade usage — when delivery may not be rejected for excess in amount tendered.**

1. Where plaintiff had contracted to deliver to defendant during February a carload of merchandise of a certain weight and early in the month notified defendant of its readiness to make delivery, to which defendant replied that it would give shipping instructions later in the month; and on February twenty-seventh the plaintiff loaded a car at its works and sent to defendant notice to that effect with an invoice and weight sheet showing the car contained 418 pounds in excess of the amount contracted for, and on the afternoon of February twenty-eighth defendant gave its shipping instructions and promised to accept delivery and make payment on the first of March, strict performance by plaintiff of its contract to make delivery in February was waived and plaintiff had a reasonable time thereafter within which to perform.

2. Defendant having refused to accept delivery on March first for the reason that the amount tendered was in excess of that contracted for, a tender on March third of the price of the merchandise agreed to be taken by defendant was good.   The right to reject for an over-delivery does not obtain where the excess is slight and cannot put the buyer to any trouble or expense and the tender so made was

within a reasonable time after the month of February in view of the defendant's acts by which delivery was delayed until the month of March.

3. Under subdivision 4 of section 125 of the Personal Property Law evidence was competent of a trade usage or custom under which a delivery of the amount here tendered was a proper delivery under a contract calling for the amount contracted for. The testimony offered was not for the purpose of contradicting the express terms of the contract, but to explain the meaning of words used therein, not in themselves technical, but to show that they were used in a particular way in the trade, and under the custom and usage so shown defendant was not justified in rejecting the delivery because of the excess in amount tendered.

*Mutual Chemical Co.* v. *Marden, Orth & Hastings Co.*, 200 App. Div. 121, reversed.

(Argued January 10, 1923; decided March 6, 1923.)

Appeal from a judgment, entered March 16, 1922, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Philip L. Miller* for appellant. Even if the original tender of 36,418 pounds was bad, a good tender was made within a reasonable time after February (defendant having waived or prevented performance during February); and in any event the defendant is estopped from objecting to the tender of 36,418 pounds. (*General El. Co.* v. *Nat. Cont. Co.*, 178 N. Y. 369; *Gallagher* v. *Nichols*, 60 N. Y. 438; *Dolan* v. *Rodgers*, 149 N. Y. 489; *Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Dannat* v. *Fuller*, 120 N. Y. 554, 559; *Standard Gas Light Co.* v. *Wood*, 61 Fed. Rep. 74; *Barnum* v. *Williams*, 102 N. Y. Supp. 874; *Borrowman* v. *Free*, L. R. 4 Q. B. Div. 500; *Tetley* v. *Shand*, 20 Wkly. Rep. 206; 3 Williston on Contracts, 2344, § 1295; Williston on Sales, 787, § 459; *Brownfield* v. *Johnston*, 128 Penn. St. 254.) Evidence of usage in the trade was competent to explain the contract, quite apart from the provisions

of subdivision 4 of section 125 of the Personal Property Law.   (*Walls* v. *Bailey,* 49 N. Y. 464; *Barton* v. *McKelway,* 22 N. J. L. 165; *Hinton* v. *Lock,* 5 Hill, 437; *Smith* v. *Wilson,* 3 B. & A. 728; *Chaurand* v. *Augustein,* 1 Peake, 43; *Grant* v. *Maddox,* 15 M. & W. 737; *Lowe* v. *Lehman,* 15 Ohio St. 179; *Mooney* v. *Howard Ins. Co.,* 138 Mass. 375; *Proctor* v. *Atlantic Fish Co.,* 208 Mass. 351; *Oswego Falls Co.* v. *Stecher Lith. Co.,* 215 N. Y. 98.)

*Edward N. Perkins* for respondent.   Unaided by custom, the only tender made in February was bad, being excessive.   (Personal Property Law, § 125, subd. 2; Williston on Sales [1909 ed.], 797, 798; *Norrington* v. *Wright,* 115 U. S. 204, 205; *Randall* v. *Nat. Ice Co.,* 138 N. Y. 644; *Brown* v. *Norton,* 50 Hun, 248; *Levino* v. *Moore Co.,* 70 App. Div. 109.)   Tender even on March first would not be a good tender of the February quota.   (*Norrington* v. *Wright,* 115 U. S. 203; *Wilson* v. *Empire Dairy Salt Co.,* 50 App. Div. 114; *Welsh* v. *Gossler,* 89 N. Y. 540, 544; *Russell* v. *Nicholl,* 3 Wend. 112; *Catlin* v. *Tobias,* 26 N. Y. 217; *Rouse* v. *Lewis,* 2 Keyes, 352; *Hill* v. *Blake,* 97 N. Y. 216; *Bowes* v. *Shand,* 2 App. Cas. 455; *Filley* v. *Pope,* 115 U. S. 219.)   Evidence of custom was incompetent in this case.   (*The Reeside,* 2 Sumn. 567; *DeWitt* v. *Berry,* 134 U. S. 312; *Silberman* v. *Clark,* 96 N. Y. 522; *Walls* v. *Bailey,* 49 N. Y. 464; *Ford* v. *Terrell,* 9 Gray, 401.)   The contention of the appellant that the defendant waived tender in February, thus making a tender on March third good, is empty, since it proceeds on the false assumption that the defendant prevented a good tender in February, and ignores the plaintiff's second bad tender on March second.   (*Norrington* v. *Wright,* 115 U. S. 204; *General El. Co.* v. *Nat. Cont. Co.,* 178 N. Y. 369.)

McLAUGHLIN, J.   On the 1st of March, 1916, the plaintiff entered into a contract with the Marmalax Manufacturing Company, Inc., to sell to it six carloads

148 Mut. Chem. Co. v. Marden, Orth & Hastings Co.

[235 N. Y. 145]     Opinion, per McLaughlin, J.     [Mar.,

of bichromate of potash at sixty-seven and one-half cents per pound and six carloads of bichromate of soda at forty-four cents per pound, delivery free on board seller's works at Baltimore, Md., or Jersey City, N. J. (West Side Avenue station Central R. R. Co. of New Jersey), seller's option. Goods to be of usual good quality and to be taken one car of bichromate of potash in April, one car of bichromate of soda in May, and shipments to continue at the rate of one car each month alternating bichromate of potash and bichromate of soda. " Carloads to be 36,000 pounds each." The terms of payment were net cash against shipping documents. The contract was assigned to the defendant and shipments were made each month up to February, 1917. Early in February the plaintiff notified defendant of its readiness to deliver the carload called for that month, but defendant replied it did not want the potash until the latter part of the month, when it would give shipping instructions. Several requests were made between the 5th and 27th for shipping instructions, but none were given until the last day of the month. On the 27th of February the plaintiff loaded a car with the potash at its works and in the afternoon of the same day sent a messenger to the defendant, with a notice to that effect, and with the notice an invoice and weight sheet showing that the car contained 36,418 pounds. When the defendant gave its shipping instructions on the afternoon of February 28th, it had had the invoice and weight sheets in its possession for at least 24 hours and it made no objection to the proposed delivery of the 36,418 pounds. Upon receiving the shipping instructions on the 28th, the plaintiff obtained a bill of lading, which it sent that afternoon, properly indorsed, to the defendant's office, with a request for a check. The defendant did not then object to the acceptance of the shipment, notwithstanding the fact that it had knowledge that the carload contained 36,418, instead of 36,000 pounds; on the contrary, it told the messenger it could

not give a check that day, but to bring the bill of lading back the next morning, when it would do so. Accordingly, the following morning, March 1, the bill of lading was again presented by the plaintiff, with a letter requesting a check. It was not then given, but the messenger was told to return at half past two that afternoon, when it would be. No objection of any kind was then made to the acceptance of the shipment. The bill of lading was sent around again at half past two in the afternoon and the messenger was then told that defendant was unable to give a check because its president, who had to sign it, was not in the office. Later in the afternoon of the same day the defendant notified the plaintiff that the proposed delivery was not in accordance with the contract, in that the carload contained 36,418 instead of 36,000 pounds, and for that reason it refused to accept delivery. On the next day the plaintiff again tendered delivery, offering to permit defendant to return either the whole cask (the potash was shipped in casks weighing about 800 pounds) or 418 pounds and defendant would be given credit for the amount returned. This tender was refused. On the following day, March 3, plaintiff made another tender of the entire 36,418 pounds for the price of 36,000 pounds. This, defendant refused to accept. This action followed.

The complaint, among other things, alleged that under a well-known and long-established custom of the trade a delivery of 36,418 pounds of bichromate of potash was a proper delivery under a contract calling for a delivery of 36,000 pounds. Testimony was offered by each of the parties bearing on that issue and the question of whether there were such a custom was submitted to the jury for determination. It found in favor of the plaintiff. There was sufficient evidence to sustain the finding.

The court charged the jury that if the defendant agreed to accept delivery on the 1st of March, then the plaintiff had a reasonable time thereafter in which to make a proper delivery, even if the one tendered on that day were not

150   Mut. Chem. Co. v. Marden, Orth & Hastings Co.

[235 N. Y. 145]    Opinion, per McLaughlin, J.        [Mar.,

so considered. A good delivery was tendered under the terms of the contract, except in so far as the same was waived by defendant. If it be assumed that the original tender of 36,418 pounds were bad, then a good tender was made within a reasonable time after February 28th and defendant's conduct estops it from asserting to the contrary. The defendant waived a delivery in February. It promised to accept delivery on the 1st of March, and then make payment. It knew, on the 28th of February, the number of pounds of potash in the car and then asked, having this knowledge, that the bill of lading be presented the following day, March 1st, when a check would be given. The defendant, therefore, waived strict performance of the contract by the plaintiff to make delivery in February. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96; *General Electric Co.* v. *National Contracting Co.*, 178 N. Y. 369; *Dolan* v. *Rodgers*, 149 N. Y. 489.) Defendant having waived delivery at the time called for by the contract, plaintiff had a reasonable time thereafter within which to perform. (*Dannat* v. *Fuller*, 120 N. Y. 554; *Standard Gas Light Co.* v. *Wood*, 61 Fed. Rep. 74.) The tender made on the 3d of March was within a reasonable time after the month of February, and especially in view of the fact that the contract gave the plaintiff the whole month in which to make delivery and that it had, in fact, notified defendant it was ready to deliver as early as February 5th, when it called for shipping instructions and that such instructions were not given until the last day of the month. I think this must follow, in view of the defendant's acts by which delivery was delayed until the month of March. The defendant, as already indicated, knew as early as the 27th of February, when it received the invoice and weight sheets, the exact number of pounds of potash in the car. It did not object to receiving the shipment. Had it done so the plaintiff would have had ample time to correct the delivery, before complying with defendant's request, and present the bill of lading on

Mut. Chem. Co. *v.* Marden, Orth & Hastings Co.   **151**

1923.]   Opinion, per McLaughlin, J.   [235 N. Y. 145]

March 1st. The tender on March 3, of the 36,418 pounds, for the price of 36,000 pounds, was good. The right to reject for an overdelivery does not obtain where the excess is slight and cannot put the buyer to any trouble or expense. (Williston on Sales, sec. 461; Mechem on Sales, sec. 1159; *Downer* v. *Thompson*, 6 Hill, 208.)

Section 125 of the Personal Property Law reads (subdivs. 2 and 4) as follows:

" 2. Where the seller delivers to the buyer a quantity of goods larger than he contracted to sell, the buyer may accept the goods included in the contract and reject the rest, or he may reject the whole. If the buyer accepts the whole of the goods so delivered, he must pay for them at the contract rate."

" 4. The provisions of this section are subject to any usage of trade, special agreement, or course of dealing between the parties."

Under subdivision 4, evidence of trade usage or custom was competent. (*Oswego Falls P. & P. Co.* v. *Stecher Lithographic Co.*, 215 N. Y. 98; *Newhall* v. *Appleton*, 114 N. Y. 140; *Walls* v. *Bailey*, 49 N. Y. 464.) The testimony offered to establish the custom or trade usage was not for the purpose of contradicting the express terms of the contract, but to explain the meaning of words used therein, not in themselves technical, but to show that they were used in a particular way in the trade. (*Oswego Falls P. & P. Co.* v. *Stecher Lithographic Co.*, *supra*; *Wells* v. *Bailey*, *supra*; *Barton* v. *McKelway*, 22 N. J. Law, 165; *Nicoll* v. *Pittsvein Coal Co.*, 269 Fed. Rep. 968; *Bailey* v. *Bensley*, 87 Ill. 556; *Floyd* v. *Mann*, 146 Mich. 356; *Lowe* v. *Lehman*, 15 Ohio St. 179; *Smith* v. *Wilson*, 3 B. & Ad. 728.)

I am of the opinion, therefore, that (a) plaintiff tendered a good delivery on the 3d of March; and (b) under the custom and usage of the trade defendant was not justified in rejecting the delivery because the carload contained 36,418 instead of 36,000 pounds.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.