### SCHNERB et al. v. HOLT MFG. CO.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 200.

1. Principal and agent ⬤⟳41—Damages must be proved in action for breach.

Under a contract by which plaintiffs were given the exclusive right to sell in certain European countries machines made by defendant, they to buy the machines and resell at their own price, an action cannot be maintained to recover one-half the amount received by defendant for machines sold by it directly in the allotted territory, there being neither allegation nor proof of damages actually sustained by plaintiffs.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Evidence** &#9901;&#10148;397(1)—**Parol evidence not admissible to affect construction of unambiguous written contract.**

Where a written contract is plain and unambiguous, evidence of conversations between the parties, either before or after it was made, is not admissible to vary its plain terms or to show their understanding of it.

**3. Pleading** &#9901;&#10148;236(4)—**Trial** &#9901;&#10148;146—**Refusal to permit amendment of pleadings or withdrawal of juror during trial held discretionary.**

Refusal to permit amendment of the complaint near the close of the trial or withdrawal of a juror *held* within the discretion of the trial court.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Jules Schnerb and Joseph Wegimont against the Holt Manufacturing Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

The complaint is at law, setting up three causes of action. The facts alleged common to all three are that defendant makes, and made prior to the outbreak of the World War in 1914, various devices embodying the idea of "caterpillar traction," and plaintiffs seem to think that defendant's embodiment of this mechanical concept perhaps suggested, and certainly greatly aided, the development of "tanks."

In 1912 an apparently authorized official of defendant wrote a letter to plaintiffs (who are Belgians) which plaintiffs accepted as a "tentative arrangement" or contract. In substance this contract letter is perfectly plain. It contains no ambiguities and confers on plaintiffs the right of "exclusive representation" until "more definite conclusions are reached" in respect of the sale of the "caterpillar traction engines made by defendants" in certain countries, to wit, France, Belgium, Holland, and Scandinavia, and and all Africa, except Tunis. Plaintiffs were to buy what engines and parts they wanted from defendant, and could then sell what they had thus bought, at whatever prices they could procure.

Before this business of selling engines for peaceful purposes had developed further than to induce plaintiffs to buy six engines and certain parts, war broke out, and plaintiffs removed from Belgium to London. It is alleged that during the war the French establishment of Schneider & Co. purchased from defendant, through a London representative, some 17 engines, and that subsequently military representatives of France purchased in the United States and from defendant a much larger number; also that representatives of the British government either in the United States or in England procured from defendant a great number of the same.

The first cause of action (hereinafter called the "French claim") sets forth the story aforesaid, makes the contract or tentative agreement above referred to a part of the complaint, and asserts that plaintiffs became entitled by reason of the sales to Schneider & Co. to a sum of money which is apparently one-half of the gross amount received from that concern, and further that by reason of "the agreements existing between plaintiff and defendant the plaintiffs are entitled to receive from defendant by reason of the sale by defendant of tractors in [French] territory" upwards of a million and a half dollars.

The second cause of action (hereinafter called the "British claim") avers that the plaintiffs were the "procuring cause" of the sales of engines or tractors made to the British government, and on such sales the complaint demands a reasonable commission, to wit, over half a million dollars.

The remaining cause of action (hereinafter called the "miscellaneous claim") again counts on the tentative agreement above referred to and avers that defendant had at divers times received and filled orders for tractors from territory (other than France) exclusively allotted to plain-

tiffs, and demanded judgment for the sum of $1,500 for every machine so sold.

At the close of a somewhat protracted trial the court dismissed the complaint, but did not direct a verdict, whereupon plaintiffs brought this writ.

We shall consider this case substantially as it was argued, but cannot let the practice exhibited in this record pass without comment. What is called a bill of exceptions, comprising with exhibits over 500 printed pages, is no more than the stenographer's minutes; no effort at compression has been made, and almost if not quite one-half of this bulk of print consists of addresses of counsel (to which no exception was taken), and of discussions between court and counsel, which by no stretch of imagination can be called evidence, and which merely obscure the points reserved for our consideration. The attorneys did agree that this should be called a bill of exceptions, but such agreement puts no compulsion upon the trial court to make it one. Consideration of it by this court is of grace. There is prefixed to this so-called bill what is intended to represent the judgment roll; but it contains no judgment. There is an order dismissing the complaint, and this is called a judgment in the index; strictly speaking, there is nothing in the record filed here to which a writ of error lies. We have assumed that the omission was inadvertent and that judgment was entered in accordance with the order.

William H. Page, of New York City (Ambrose Clogher and Wm. Harvey Smith, of New York City, of counsel), for plaintiffs in error.

John Thomas Smith, of New York City (Frank A. Gaynor, of New York City, and Frank T. Miller, of Syracuse, N. Y., of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The "British claim," as pleaded, is for a commission. Plaintiffs asserted themselves to have been the procuring cause of defendant's getting large orders from the government of Great Britain. We shall assume that either in the complaint or by amendment at trial the cause of action was properly set forth as a demand for the compensation of a broker. It is enough to say that we entirely agree with the lower court that no evidence was given sufficient to take the case to the jury. Of the other claims it is to be noted that both rest in terms on the tentative agreement above set forth. As to the "miscellaneous claim" there was complete lack of proof and the matter need not be pursued further.

[1] The "French claim" is not for a commission, and at trial plaintiffs' counsel most positively asserted (we presume as his interpretation of the pleadings) that they were not claiming any commission on sales made in France. It must be plain that the tentative contract is inconsistent with any claim for commission. The exclusive right conferred on plaintiffs by that agreement was that they themselves should buy goods to sell again within their allotted territory. Doubtless this exclusive right could be violated, and plaintiffs could receive substantial damage by defendant invading plaintiffs' allotted territory. But the complaint does not indicate how such damage was to be admeasured, nor does the evidence furnish any information on the subject. The pleadings were drawn and the case tried apparently on the theory that, if defendant made any sales in or to France, a certain fixed proportion of such sales immediately accrued to plaintiffs. This is

certainly not true under the complaint, nor does the evidence give any information why plaintiff should receive the sums sued for, or any especial sum.

[2] On this writ complaint is made that the court prevented illumination of the foregoing matters by excluding conversations between plaintiffs and the officer of defendant who signed the tentative agreement, had at and immediately before the time the contract sued on was made. We have already noted that there is nothing ambiguous or doubtful about this agreement. As to its legal effect we are not required to speak at present, as we perceive no error in the ruling of the court below. The parties put their agreement into writing. It makes no difference whether it was tentative or not; it was the only agreement they had, and it must be taken to be the embodiment of the whole of that agreement. The matter is very well put in Coca, etc., Co. v. Coca Cola Co. (D. C.) 269 Fed. 796, 804; and in this court exactly the same effort was made and denied in Shoninger v. Dormer, 241 Fed. 662, 154 C. C. A. 420, and in Ohio, etc., Works v. Oneida, 271 Fed. 57.

Plaintiffs in error also feel aggrieved because one of the plaintiffs, shortly before action begun, called at defendant's American headquarters and there had talk with an employee who during the war had been defendant's agent or representative in London, and an offer to put this conversation before the jury was denied. It is said that this testimony would have tended to show admissions by defendant as to the "practical construction of the agreement" above referred to. That is merely a variant of the effort just quoted to construe, if not to vary, language that the parties chose or agreed to—language which, in our opinion, needs no construction, other than plain reading by a plain person.

[3] Finally, it is asserted for error that the court below, toward the close of this lengthened trial, refused either to withdraw a juror or to permit further amendment of the complaint. These were matters too plainly within the discretion of the court to require citation.

Judgment affirmed, with costs.